PEOPLE v. ORIENTAL BANK.

(Supreme Court, Appellate Division, First Department. April 7, 1911.)

Appeal from Special Term, New York County.

Action by the People against the Oriental Bank. From an order confirming report of referee requiring defendant to pay to the Carnegie Trust Company and another, who were appointed by an ex parte order temporary receivers of defendant, the sum of $10,872.49 as their commissions and disbursements as temporary receivers, and $680.63 as the costs of proceedings to ascertain the amount of fees and disbursements, defendant appeals. Modified and affirmed.

See, also, 124 App. Div. 741, 109 N. Y. Supp. 509; 129 App. Div. 865, 114 N. Y. Supp. 440.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Charles K. Beekman, for appellant.

John L. Wells, for respondents Carnegie Trust Co. and Henry Schneider, as receivers.

William A. McQuaid, Deputy Atty. Gen., for the People.

PER CURIAM. Modified and affirmed.

INGRAHAM, P. J. (dissenting). The serious question presented on this appeal is whether the defendant, the Oriental Bank, is bound to pay the fees and disbursements for services as counsel and other expenses of these temporary receivers and the costs and expenses of this proceeding to enforce their right to compensation. The facts in relation to the appointment of these receivers are stated on the appeal to this court from an order vacating the ex parte order appointing them reported in 124 App. Div. 741, 109 N. Y. Supp. 509. The

defendant was a banking corporation organized under the laws of this state. On the 31st day of January, 1908, the resolution was passed by the board of directors of the defendant requesting the state superintendent of banks to take charge of its affairs. That official complied with the request, and advised the Attorney General that the defendant had suspended payment, and he had taken possession of its assets at its request. The superintendent of banks then examined the assets and liabilities of the defendant, and reported that the defendant had a surplus of over $1,000,000, exclusive of its liability on capital stock. It being thus officially determined that the defendant was entirely solvent, but in consequence of the existing financial conditions in New York had placed its assets in the hands of the superintendent of banks, it commenced negotiations with various trust companies to liquidate its liabilities, and those negotiations at the time of the commencement of this action had resulted in an arrangement by which the obligation of defendant would be at once paid. The Attorney General was apprised of the financial condition of the defendant, that it was entirely solvent, and that its assets were in the custody of the superintendent of banks, and that the negotiations to pay off all of the bank's indebtedness had been successful, that the Metropolitan Trust Company of New York, an important financial institution, had agreed to advance sufficient money for that purpose, of which the superintendent of banks had given his approval, and the Attorney General had been notified of this arrangement and was also requested to give his approval. Of course, if this arrangement was carried out, there would be no possible reason for the interference of the state, no possible object for the appointment of receivers, except that for the individual benefit of the receivers they would be able to appropriate to themselves for their fees and expenses a part of the assets which belonged to the creditors and stockholders of the defendant, and no court administering justice, if these facts had been brought to its attention, would even have entertained an application for the appointment of receivers.

It further appeared that prior to this time the Carnegie Trust Company had been negotiating with the defendant to advance money necessary to pay the defendant's indebtedness, but that the agreement had been made with the Metropolitan Trust Company under which its creditors were to be satisfied; and it also appeared that the president of the Carnegie Trust Company had been in communication with the Attorney General, asking that it should be appointed a receiver of the defendant. In this situation the Attorney General ex parte, without notice of any kind to the defendant or to the superintendent of banks, and without acquainting the court of the facts of which he had knowledge and to which attention has been called, obtained from the Special Term of this court an order appointing these respondents receivers of the defendant. The defendant immediately applied to the Special Term to vacate that order, who upon the attention of the court being called to these facts promptly vacated it. I cannot see that up to this time the expenses or disbursements which the defendants are now required to pay had been incurred by the re-

ceivers, and no services had been rendered to entitle them to any fees. The protection of the creditors of the defendant did not justify the application for the appointment of receivers. Its assets were all in the hands of the superintendent of banks. Until its creditors were satisfied, neither the defendant nor its officers could dispose of a dollar of its assets, and its assets were amply sufficient to satisfy all of its indebtedness. The public interest did not require that receivers should be appointed, or that any action should be taken against the bank, for it had suspended its business, and was not incurring additional obligations in any way. No interest to the state required any judicial proceeding against the defendant, as the state itself by its officers was in possession of all the assets of the corporation. The Special Term of the Supreme Court had determined that the appointment of a receiver was improper, that no receiver was required, and had vacated the order appointing the receiver. Notwithstanding that there could be no possible aspect in which any judicial interference with this corporation was justified, the Attorney General appealed and by that appeal stayed the operation of the order of the Special Term which vacated the order appointing the receivers and required them to redeliver possession, so far as they had taken possession, to the custody in which the assets were before the application for a receiver had been made. The receivers, therefore, without the slightest necessity, where the order appointing them had been vacated, but acting under the claim that the effect of the order vacating the receiver was stayed, got possession of the assets of the defendant and retained such assets in their possession until the appeal could be disposed of by this court. Upon the appeal to this court, the order of the Special Term vacating the order appointing the receiver was affirmed upon the ground that the Attorney General should have given the defendant notice of this application for the appointment of temporary receivers; that the law contemplates giving notice of the application, with the provision, however, that the court was given discretion to dispense with notice when it appeared that instant action was necessary to prevent some impending wrong, that in this case, instead of there being any such proof, it appeared before the court that the funds of the defendant were all in the hands of the superintendent of banks, the state official authorized by law to hold them. Thus it was held that the order appointing the receivers was unauthorized.

The facts justifying the appointment without notice to the defendant were not before the court, and, as a matter of fact, there were no such facts existing which justified such a summary proceeding. The action of the court in granting the order was improvident, and consequently the acts of the Attorney General in applying to the court for such an order was unauthorized and a violation of the law. There was no possible advantage to the defendant, to the creditors, or to its stockholders from this unauthorized act of the Attorney General in procuring from the court an ex parte order for the appointment of these receivers. While the court had jurisdiction to dispense with notice if the facts appeared to justify a finding that the appointment

of the receivers was necessary to prevent some threatened misappropriation of property to the detriment of the creditors or stockholders, or to the public, there were no such facts presented in this case. The appointment of these receivers, therefore, having been, as this court has held, without legal authority and improvident, and the possession of the receivers maintained by an improvident appeal from the order of the Special Term vacating the order appointing the receivers, this court is now asked to compel the defendant, whose property was thus illegally and wrongfully taken possession of by these receivers, to pay to the receivers compensation for their services and the services of a lawyer employed by them for retaining the custody of the property pending the appeal. It is conceded that the services rendered by the receivers was mainly rendered by the Carnegie Trust Company, and that it had solicited its appointment as receiver from the Attorney General. The only services that it rendered which would justify the allowance for compensation were for the services rendered pending the appeal from the order of the Special Term which had vacated the receivership; and I think the court has no power to compel a defendant whose property has been taken from it by receivers appointed under the circumstances disclosed in this case to compel the party whose property has been illegally taken to pay to the receivers compensation for their acts while holding the property pending an appeal from the order which has removed them, or, if it has such power, I do not think the court, in the exercise of its discretion, should require the defendant to pay compensation for services rendered under such circumstances. If receivers had been appointed on the application of a private individual under such circumstances, no one would think for a moment of compelling the defendant whose property had been thus wrongfully taken from his possession to pay the expenses of taking it, but the burden of paying those expenses would be cast upon the plaintiff who had instigated the appointment of a receiver. There is certainly no reason why a different rule should be applied where the state is the moving party. The state had selected its Attorney General, and the Legislature had vested him with certain powers to protect the people of the state and the creditors and stockholders of insolvent corporations. In the exercise of the power given to him by the people of the state, he acted when he procured the appointment of the receivers. I can see no reason why the state should not be made responsible for his acts when unauthorized, rather than an innocent defendant whose property has been wrongfully taken from its possession at the instigation of the Attorney General. I think the case is analogous to the case of a defendant whose property has been taken from his possession by a warrant of attachment which had been granted without authority. In such case, it has been held that the Legislature had no power to impose upon a defendant, whose property had thus been wrongfully taken from his possession by the sheriff under a warrant of attachment to pay the sheriff's fees and disbursements for the levy under the attachment; and I can see no distinction between the cases. See Bowe v. U. S. Reflector Co., 36 Hun, 407. I think the facts in this case justify the inference that the ap-

plication for this receivership was made solely for the benefit of giving to the receivers appointed an opportunity of collecting compensation from the defendant or its property for their services as receivers, as the receivers are the only persons who could possibly benefit from the appointment. That being so, I think the receivers should be left to their claim against the state, and that the court had not the power, or, if it had, it should not exercise it to deplete the property of the defendant by compelling it to pay to the receivers this large sum of money for services which could be of no possible benefit to the creditors of the corporation, its stockholders, or the people.

I also think that the court was without power to allow any compensation to counsel employed by the receivers, as such an allowance is prohibited by section 2a of chapter 378 of tne Laws of 1883, as amended by chapter 349 of the Laws of 1906. It was clearly intended, it seems to me, by this provision that no payment to counsel should be made, except under a contract between counsel and the receiver, in which the amount to be charged by counsel was expressly stated and which contract has been approved by the Supreme Court. No such contract was made in this case; nor do I think the court had power to impose upon this corporation the expenses of the litigation in determining the receivers' fees.

I think, therefore, that the order appealed from should be reversed, and the motion to compel the defendant to pay to these receivers any sum of money for their commissions and disbursements denied.